**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )  ) | |
| **Plaintiff,** ) ) | **Case No. 4:22-CR-00281-AGF** |
| **v.** ) ) | |
| **SCOTT F. BUROW,** ) ) | |
| **Defendant.** ) | |

### DEFENDANT BUROW'S SENTENCING MEMORANDUM

Defendant Scott F. Burow ("Burow"), by and through undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory objectives of punishment. *See* 18 U.S.C. § 3553(a). Burow respectfully requests, jointly with the United States, that this Court impose a sentence of 84 months' imprisonment.

The 63-year-old man who stands before this Court for sentencing has fully accepted responsibility for his conduct and is profoundly remorseful for what he has done. While Burow certainly appreciates the seriousness of the crime to which he pled guilty, based on his background, full acceptance of responsibility, sincere remorse, and his profoundly positive attributes, Burow submits that a sentence of 84 months is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Indeed, the United States concurs, by written plea agreement pursuant to Rule 11(c)(1)(A) and (B), that a sentence of 84 months in this case is appropriate.

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Burow as an individual in crafting an appropriate sentence that is particularly tailored to him. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every

convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant"). To that end, Burow has included with this memorandum several letters of support from close family members and friends.

## I.  Procedural Background

On May 18, 2022, Burow was charged in an indictment with one count of enticement in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), (c), and 1594(a). (Doc. 1). On October 31, 2022, the Government filed a superseding information charging Burow with transportation of a minor to engage in prohibited sexual conduct in violation of 18 U.S.C. § 2422(a). (Doc. 31). On the same day, Burow entered a plea of guilty, pursuant to a written plea agreement with the Government under Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), to the superseding information. (Doc. 35). On January 9, 2023, the United States Probation Office filed its Presentence Investigation Report ("PSR"). (Doc. 43). Both parties have accepted the PSR without objection. (Docs. 44 and 45).

## II.  Legal Standard

Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory." *United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . . . Next, the district court

should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . . . The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . . . The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . . . Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . . . As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya*, 623 F.3d 624, 625–26 (8th Cir. 2010) (citations omitted).

### III.    Guidelines

Burow has no objection to the PSR's calculation of the advisory Guidelines in this case. Specifically, he has no objection to the PSR's conclusion that the Total Offense Level in this case is 35 and that his criminal history category is I. (Doc. 43 at ¶¶ 44 and 49). As such, Burow has no objection to the PSR's conclusion that the advisory Guidelines range in this case is 168 to 210 months. (*Id.* at ¶ 87).

The PSR also appropriately suggests that a downward variance may be warranted in this case due to the sexual abuse and depression Burow suffered as a child, his total lack of criminal history, and his 17 years of work on behalf of juveniles. (*Id.* at ¶ 106).

### IV.    Section 3553(a) Factors

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the Section 3553(a) factors based on all the facts presented. *See Gall*, 552 U.S. at 50. Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists seven factors that a sentencing court must consider. Especially relevant to this case, and supportive of the parties' joint recommendation that this Court sentence Burow to 84 months, are the following factors:

3

A. <u>The History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)</u>

Burow was born and raised in St. Louis. Despite a stable home life, Burow experienced significant trauma during his childhood. Burow was bullied throughout his school-age years and was isolated from his peers. This bullying directly impacted his school performance. He was considered an academically promising student in elementary school but was making only mediocre grades by middle school. Desperate to feel included and accepted, Burow joined the Boy Scouts. Unfortunately, this choice only led to worse trauma.

When he was twelve years old, while camping with his Boy Scouts troop, older Boy Scouts stripped Burow of his clothes, repeatedly touched his genitals, and anally penetrated him. At subsequent monthly campouts, the older Boy Scouts continued to orally and manually sexually molest Burow until he eventually quit the Scouts—the one place he had hoped to find friendship and inclusion.

Without the support of the Scouts, Burow was once again bullied at school. The bullying was so intense that he could not even ride the bus to school safely. During this period, Burow began suffering from severe depression and post-traumatic stress disorder.

Lacking any support or inclusion at school, Burow found comfort in work, starting his first job at age 16. After earning two bachelor's degrees, Burow began working as a juvenile court officer. Burow thrived in this career for the next 32 years, serving twice as the elected President of the Missouri Juvenile Officers Association. Burow traveled the state speaking to elected officials and others regarding juvenile issues and was widely respected in his community.

Burow even tried to overcome his childhood trauma and began leading the local Boy Scouts troop in which his son participated. Tragically, Burow's successes began to crumble when

4

his college-aged son was arrested for internet-based sex offenses. Burow later learned that his son has also been sexually molested by older boys in his Boy Scouts troop.

After his son's conviction became public, Burow was soon ostracized from the Boy Scouts. Conditions at work also began to deteriorate. Repeatedly rejected for the position of Chief Juvenile Officer despite the recommendation and support of judges, other agencies, and prosecuting attorneys, Burow resigned.

He took a new job as a support coordinator for the developmentally disabled but struggled to adapt to the steep learning curve and high stress load. Burow's career change, the death of his father, and his son's incarceration took their toll on his marriage as well, eventually leading to divorce after 35 years of marriage.

Then came the COVID-19 pandemic. Isolated from the support of his co-workers, Burow again struggled with severe depression. It was at this point that Burow committed the acts to which he has pled guilty in this case.

Burow unquestionably made a series of terrible choices that bring him before this Court. However, the sexual abuse he suffered as a child and his severe depression provide context essential to understanding how he went from a long career of dedicated service to juveniles to committing the offense conduct in this case. Thankfully, Burow is now married to a loving and supportive wife who has played an enormous part in Burow's journey of recovery from his depression, acceptance of his conduct in this case, and his commitment to changing his life moving forward.

It is also important to remember that Burow has no criminal history. The crime he committed in this case was the result of a terrible decision made at a uniquely dark point in his life. Burow is an imperfect man who has suffered and who made a terrible decision. But he

5

respectfully requests that this Court consider who he truly is as it aims to impose a sufficient sentence in this case.

                B.        The Need for the Sentence to Promote Just Punishment, Deterrence, Incapacitation, and Rehabilitation – 18 U.S.C. § 3553(a)(2)

While the crime to which Burow has pled guilty is, undoubtedly, a serious offense, Burow respectfully requests that this Court consider both the successes and struggles in his life. A sentence of 84 months is an appropriate punishment for Burow's conduct. This sentence reflects the severity of his conduct and the harm he has caused. But it also reflects that Burow has accepted responsibility for his actions and has already begun to live a better life.

A sentence of 84 months will also be sufficient to deter future criminal conduct. In this case, Burow's total lack of criminal history should reassure the Court that it will not see him again after his sentencing hearing.

Burow's age—63 years old—is further evidence that he is unlikely to recidivate. Sentencing courts often consider a defendant's age when considering this Section 3553(a) factor. Indeed, there are a number of decisions in which courts have given notably less weight to the Sentencing Guidelines in recognition of the fact that older individuals, some as young as 40, are far less likely to commit additional crimes. *See* United States Sentencing Commission, *Recidivism: Criminal History Computation of the Federal Sentencing Guidelines* (2004) (showing that those in the age group of 41 to 50 who fall in criminal history category I have an especially low recidivism rate of 6.9%, as compared to those, for example, in the 36 to 40 years of age bracket who recidivate at a rate of 12.1% and those under age 21 who recidivate at a rate of 29.5%); *see also United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. Apr. 11, 2005) (observing that those defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants"). The Sentencing Commission releases such empirical

6

studies precisely so that, in cases such as this, the Court can include these facts in its consideration of a fair sentence.

In light of Burow's struggle with depression and post-traumatic stress disorder, he agrees with the PSR's conclusion that he would benefit from participation in mental health treatment during any period of incarceration. (*See* Doc. 43 at 13). Mental health treatment will contribute significantly to Burow's rehabilitation during any period of incarceration.

Finally, a sentence of 84 months will provide a substantial punishment that is sufficient to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment" as well as deterring future criminal conduct. 18 U.S.C. § 3553(a)(2). Burow will suffer the consequences of his actions while receiving the opportunity and treatment necessary to change the course of his life.

For these reasons, a sentence of 84 months will appropriately punish Burow and provide him opportunities for rehabilitation, and he will not recidivate.

### V.     Conclusion

Based on the foregoing, Burow respectfully requests that this Court sentence him to 84 months as jointly requested by the parties in the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B). He has fully accepted responsibility for his conduct.

For all these reasons, Burow respectfully submits that a sentence of 84 months is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ William S. Margulis*
William S. Margulis, #37625
Justin K. Gelfand, #62265
Ian T. Murphy, #68289
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com
*Counsel for Defendant*

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ William S. Margulis*
William S. Margulis, #37625
Justin K. Gelfand, #62265
Ian T. Murphy, #68289
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com
*Counsel for Defendant*